UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 17-11178 |
| WILLOW BEND VENTURES, LLC | SECTION "A" |
| DEBTOR | CHAPTER 11 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

RIVER PARISHES DIRT & GRAVEL, LLC

    PLAINTIFF

VERSUS                                                                                                ADV.P. NO. 18-1122

BANKPLUS

    DEFENDANT

## ORDER WITH REASONS

This matter came before the court on February 22, 2019 as a hearing on a motion for summary judgment filed by defendant BankPlus (P-16).[1] The adversary proceeding is an objection to the claim of BankPlus. The issue is whether BankPlus was obligated to re-inscribe its mortgage to maintain its secured position on property of the estate. BankPlus, in its motion, maintains that it was not required to reinscribe the mortgage, because 11 U.S.C. 108(c) extends the time fixed for it to reinscribe its mortgage until 30 days after the automatic stay is no longer in effect, which has not happened yet. The court agrees. At the hearing the court stated that it would grant the motion but would provide written reasons for its decision. Accordingly,

    IT IS ORDERED that the motion for summary judgment is GRANTED.

    IT I FURTHER ORDERED that the adversary proceeding is DISMISSED.

---

[1] The main bankruptcy case is pending in Section "A" of this court. Because the presiding judge, Judge Elizabeth W. Magner, has a conflict with the law firm representing BankPlus, this adversary proceeding, and only this adversary proceeding, was referred to Section "B" of this court. All references to orders or actions taken in the case refer to actions taken by Judge Magner in this case.

I.  **Background Facts**

BankPlus loaned money to the debtor, Willow Bend Ventures, LLC (the "debtor" or "Willow Bend"), evidenced by three promissory notes with different dates.[2] The loans were secured by a multiple indebtedness mortgage dated January 4, 2008 in favor of BankPlus, executed by Willow Bend through Hensley R. Lee and Kim A. Johnson, its managers.

On May 9, 2017, Willow Bend filed a petition for relief under Chapter 11 of the U.S. Bankruptcy Code.[3] On September 6, 2017, BankPlus timely filed a proof of claim in the amount of $6,570,668.43. The debtor filed a motion for sale of property free and clear of liens under 11 U.S.C. 363(f) (R.Doc. 84) on October 13, 2017. Several objections were filed, and after a hearing, the court entered an order dated January 4, 2018, approving the sale of the debtor's property to River Parishes Dirt & Gravel, LLC ("River Parishes"), the plaintiff in this adversary proceeding (R.Doc. 152).[4] The motion to sell listed the three BankPlus loans, with the approximate amounts still due, and the balance the debtor expected to receive from the sale after the BankPlus loans were paid.[5] The motion stated that the balance was to be placed in the registry of the court until certain tax claims pending against the debtor could be resolved. An immaterial modification to the motion to sell was filed on November 10, 2017 (R.Doc. 107). The modification proposed that all proceeds from the sale be deposited into the registry of the court.[6]

---

[2] Loan 7103 dated August 3, 2010 in the original principal amount of $5,805,413.13; Loan 6804 dated October 29, 2015 in the original principal amount of $3,033,768.88; and Loan 4803 dated October 29, 2015 in the original principal amount of $2,005,270.00.
[3] 11 U.S.C. § 101 *et seq.*
[4] Although the order was not entered until January 4, 2018, Judge Magner approved the sale at the hearing on December 20, 2017 and entered a memo to record that the sale had been approved (R.Doc. 142).
[5] The motion stated that the sale price would be $7,200,000.00; the amount of the BankPlus loans was estimated at $2,005,270.00 for Loan 4803; $3,033,768.88 for Loan 6804; and $1,495,026.85 for Loan 7103. This left $665,934.27 to be deposited into the registry of the court for the tax creditors, who had claims well in excess of that amount.
[6] This was not because of any concerns about the BankPlus mortgage being prescribed.

Several objections were filed to the motion to sell, and a hearing was held on December 20, 2017, at which a representative of River Parishes testified.[7] The court approved the motion to sell. The order approving the motion was entered on January 4, 2018 (R.Doc. 152), which also happened to be the day that the ten-year period under which BankPlus's mortgage recordation was effective expired under the Louisiana Civil Code.[8] BankPlus did not reinscribe its mortgage against the property of the debtor.

II. **Complications Arise**

After the motion to sell was approved, the debtor amended its disclosure statement and plan and continued to try to work out its issues with various creditors. A few adversary proceedings were filed by the debtor in connection with various claim objections. On March 19, 2018 after holding a hearing on the disclosure statement, the court entered an order continuing the hearing to June 11, 2018 and ordered the debtor and the Louisiana Department of Revenue ("LDR") to file motions for summary judgment on the LDR's claims against the debtor.

On April 10, 2018, the debtor filed a motion to reject lease or executory contract (R.Doc. 210) asking the court to cancel the sale to River Parishes, citing difficulties with River Parishes that were hindering the closing of the sale. After a hearing on the motion to reject, the court set a status conference to attempt to get the sale back on track and ordered both the debtor and River Parishes to produce certain documents related to the sale. On May 22, 2018 River Parishes filed an adversary proceeding against the debtor seeking damages for an alleged breach of an agreement to sell the membership interests of the debtor to River Parishes that had been entered into after the filing of the bankruptcy petition, but without requesting approval of the court (or

---

[7] John Wagner testified that he was the principal of River Parishes.
[8] Louisiana Civil Code Article 3357 states: "Except as otherwise expressly provided by law, the effect of recordation of an instrument creating a mortgage or pledge or evidencing a privilege ceases ten years after the date of the instrument."

even notifying the court of the agreement). This agreement preceded the filing of the motion to sell that the court later approved.

On June 18, 2018 yet another status conference was held (R.Doc. 280), and the court ordered the debtor to file motions to cancel all liens on the property, as well as for the production of additional documents from the debtor to River Parishes.[9] The court further ordered that the sale would close on or before July 30, 2018. Pursuant to that order, the debtor filed several motions to avoid lien on June 28, 2018; among those motions was a motion to avoid lien with BankPlus (R.Doc. 297), which sought to cancel the inscription of the BankPlus mortgage on the debtor's property. Because of a conflict with BankPlus's counsel, the judge assigned to the case cancelled the hearing on the motion to avoid the BankPlus lien, and entered an order transferring the hearing of that matter to this section of the court (R.Doc. 313). No such hearing was held, however, because eventually the parties agreed to an order on the motion, and that order was entered on July 24, 2018 (R.Doc. 323).[10] On August 2, 2018, an order was entered directing that the purchase price of the debtor's assets, $7.2 million, be deposited into the registry of the court (R.Doc. 343).

Shortly thereafter, the debtor filed its second amended disclosure statement and plan (R.Docs. 356 & 358). On September 20, 2018, River Parishes filed an objection on the basis that the plan would pay funds from the sale proceeds in the registry of the court to BankPlus (R.Doc. 376). In this motion River Parishes alleged for the first time that the BankPlus mortgage had lapsed on January 4, 2018 because BankPlus had not reinscribed its mortgage within ten years of its date. On October 8, 2018 River Parishes filed this adversary proceeding, objecting to the secured status of BankPlus's claim. At an October 10, 2018 hearing, the court ordered the debtor

---

[9] Apparently the debtor had not supplied River Parishes with all of the information it needed to effectuate the sale.
[10] This order was signed by Judge Magner.

to file an adversary proceeding against River Parishes seeking a declaratory judgment that River Parishes does not have an administrative claim in the bankruptcy proceeding (R.Doc. 401); the debtor filed that complaint on October 26, 2018.[11]

### III. The BankPlus mortgage and Section 108(c) of the Bankruptcy Code

The crux of River Parishes' argument is that BankPlus was obligated to reinscribe the mortgage under Louisiana law. Because BankPlus did not reinscribe before January 4, 2018, River Parishes argues that the mortgage now has no effect as to third parties, and BankPlus is thus an unsecured creditor. In support of this proposition, River Parishes cites and relies heavily on *In re 800 Bourbon Steet, LLC*, 541 B.R. 616 (Bankr.E.D.La. 2015).[12]

Not surprisingly, BankPlus disagrees. BankPlus argues that under §108(c) of the Bankruptcy Code, it did not have to reinscribe its mortgage to maintain its secured position, because §108(c) tolled the statute of limitations on the requirement to reinscribe. BankPlus argues that although it *could* have reinscribed the mortgage under §362(b)(3), it was not *required* to do so. In support of its argument BankPlus cites *In re Shamus Holdings, LLC,* 642 F.3d 2636 (1st Cir. 2011), and several other similar cases.[13]

*Shamus Holdings,* the primary case upon which BankPlus relies, involved a Massachusetts statute[14] that required the holder of a mortgage, on pain of forfeiture, to take action to enforce the

---

[11] Adversary Proceeding 18-1133.

[12] *800 Bourbon Street* was authored by Bankruptcy Judge Elizabeth Magner, the presiding judge in the main case, who referred this adversary proceeding to the undersigned judge.

[13] BankPlus also makes an argument that River Parishes has no standing to object to its claim, but the parties agreed at oral argument not to address that issue because it was tied to an objection to administrative claim that was pending before the judge assigned to the main case. That decision was entered on May 24, 2019, and it held that River Parishes does not have an administrative expense claim. Because this judge was able to reach his decision without addressing the standing argument, he will not revisit that part of the summary judgment motion even though the other judge has now ruled on this matter.

[14] Mass. Gen. Laws ch. 260, § 33 states:

> A power of sale in any mortgage of real estate shall not be exercised and an entry shall not be made nor possession taken nor proceeding begun for foreclosure of any such mortgage after the expiration. Of …, in the case of a mortgage in which the term or maturity date of the mortgage is

mortgage within five years after the end of the mortgage's stated term.[15] In *Shamus* the deadline had not arrived when Shamus, the debtor, initiated the bankruptcy proceeding. The First Circuit reasoned that this Massachusetts statute did not operate in a vacuum. Rather, the bankruptcy petition triggered the automatic stay provisions of § 362 (a), by stopping collection efforts and giving the debtor breathing room.[16] Further, §108(c) extends statutes of limitations for creditors who are barred by the automatic stay from taking timely action against the debtor.[17] In *Shamus*, just as in this case, the argument was raised that 11 U.S.C. § 362 (b)(3) contains an exception to the automatic stay because it allows to a creditor "to perfect, or to maintain or continue the perfection of, an interest in property." Thus, went the argument, the tolling provisions of §108(c) should not apply. The First Circuit rejected this argument, stating that "neither the case law nor the language of section 362(b)(3) itself suggests that the action it contemplates is mandatory rather than permissive. It clearly is not."[18]

The case upon which River Parishes relies, *800 Bourbon Street*, reached the opposite result. *800 Bourbon Street* concerns a debtor in its second Chapter 11 proceeding. In the first Chapter 11, a plan was confirmed giving creditor Bay Bridge, who had filed a secured proof of claim in the first case based on several promissory notes and a mortgage, an *"in rem"* claim against property of the debtor as security for its notes and mortgage.[19] In the second Chapter 11 proceeding, Bay Bridge filed a proof of claim based on the same notes and mortgage. Bay Bridge's mortgage lapsed during the pendency of the second bankruptcy case, and it reinscribed

---

stated, 5 years from the expiration of the term or from the maturity date, unless an extension of the mortgage, or an acknowledgment or affidavit that the mortgage is not satisfied, is recorded before the expiration of such period. *In re Shamus Holdings, LLC,* 642 F.3d 263, 265 (1st Cir. 2011).

[15] *Shamus Holdings*, 642 F.3d at 264.
[16] *Shamus Holdings*, 642 F.3d at 265.
[17] *Shamus Holdings*, 642 F.3d at 266.
[18] *Shamus Holdings*, 642 F.3d at 267.
[19] The first and second Chapter 11 cases were before the same judge.

the mortgage shortly after the adversary proceeding objecting to its claim was filed. Bay Bridge responded with several different theories as to why its claim was a secured claim. The *800 Bourbon Street* opinion discussed why Bay Bridge's failure to reinscribe was fatal to its claim, and how it could not avail itself of §108(c) because § 362(b)(3) did not prevent Bay Bridge from reinscribing the mortgage.[20] The court explicitly held that, "the filing of a bankruptcy does not excuse a creditor from maintaining its security interest postpetition." This is in direct contradiction to the holding of *Shamus*, which states:

> Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code. Consequently, when federal bankruptcy law supplies a rule that speaks directly to the right at issue, that rule controls. So it is here: while Massachusetts law defines the parties' rights and obligations under the mortgage (including the duration of the limitations period), section 108(c) of the Bankruptcy Code speaks directly to the enlargement of the statute of limitations periods. Accordingly, section 108(c) controls here.[21]

*Shamus Holdings* is not the only case to find that § 362(b)(3) is permissive rather than mandatory. *See In re 201 Forest Street, LLC*, 422 B.R. 888 (1st Cir. B.A.P. 2010); *In re Essex Construction, LLC*, 591 B.R. 630 (Bankr. Md. 2018) (because the current 11 U.S.C. § 362(b)(3) *allows* a creditor to file a continuation statement does not mean a creditor is *required* to file the continuation statement); *Toranto v. Dzikowski,* 380 B.R. 96 (S.D. Fla. 2007) (on its own terms § 362(b)(3) does not require a creditor to do anything, but merely provides that certain actions to maintain or continue a [lien] are exempted from the automatic stay). In contrast, River Parishes

---

[20] The end result in *800 Bourbon Street*, however, was that Bay Bridge's claim was paid because the property was sold for well in excess of what the debtor in that case owed its creditors, and because Bay Bridge could enforce the mortgage against the debtor (although not against third parties), there was enough money for Bay Bridge to be paid its claim. The court notes that *800 Bourbon Street* case, and the judgment allowing the claim of Bay Bridge is still under appeal, although the specific argument presented here about the §108(c) issue is not part of that appeal.
[21] *Shamus Holdings*, 642 F.3d at 267-68.

points to no other case besides *800 Bourbon Street* to hold that § 362(b)(3) creates an obligation to reinscribe or continue a mortgage after the commencement of a bankruptcy case.

> *800 Bourbon Street* also held that § 108(c)(2) applies only to civil court proceedings:
>
> > It applies only to civil actions in courts on claims against the debtor … But it does not appear to apply to other types of acts against the debtor … that do not involve litigation, such as the filing of documents other than court proceedings.[22]
> >
> > ***
> >
> > The continuation of perfection by Bay Bridge is not a civil court proceeding. Instead it is governed by section 363(b)(3), which specifically allows the maintenance or continuation of a security interest without violating the automatic stay. When pursuant to section 363(b)(3) a party is not stayed from continuing its security interest section 108(c) does not apply.[23]

This proposition the court took from Collier on Bankruptcy.[24] The particular sentence from Collier quoted by the court cites two cases: *In re Vassilowitch,* 72 B.R. 803 (Bankr. D. Mass. 1987) and *In re RDR Systems Development, Inc.*, 57 B.R. 540 (Bankr. M.D. La. 1986). *Vassilowitch* concerned a deadline contained in a state court divorce judgment by which one of the ex-spouses was required to exercise a purchase option. The bankruptcy court in that case opined that it did not believe § 108(c) would apply to such a deadline, but that even if it did assume that § 108(c) applied, there was no showing that the funds required to exercise the purchase option had been tendered with in the 30 days following the expiration of the automatic stay. This holding is clearly not on point with the facts in this case (or in the *800 Bourbon Street* case).

*RDR Systems* concerns a case under Louisiana law similar to the one at issue here, which required reinscription of a statement of assignment. The creditor argued that the time for reinscription was extended by § 108(c), and the court found that this argument was "not

---

[22] *In re 800 Bourbon Street, LLC,* 541 B.R. 616, 628 (Bankr. E.D.La. 2015).
[23] *800 Bourbon Street, LLC,* 541 B.R. at 629.
[24] Specifically, 2 Collier on Bankruptcy, ¶108.04[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)

persuasive since § 108(c) applies to 'commencing or continuing a civil action in a court other than a bankruptcy court.' The issue at bar is reinscription of a statement of assignment and not the institution of a civil action."[25] The court went on, however, to state:

> [T]he Court finds that reinscription was not necessary and that the statement of assignment of accounts receivable is effective for the reasons stated in *In re Bond Enterprises, Inc.*, 54 B.R. 366 (Bkrtcy., D.N.Mex. 1985). The substance of that conclusion is that the validity of the assignment in the circumstances of the case at bar is tested at the date of filing, not at a subsequent date.

Thus, this second case that Collier cites for the proposition that § 108(c)(2) applies only to civil actions in courts on claims against the debtor expressly holds that the creditor can rely on its position at the date of the filing of the bankruptcy petition and has no need to reinscribe under Louisiana state law if its claim had not yet expired at the time the bankruptcy case was filed.

It is true, as the *800 Bourbon Street* court pointed out,[26] that some of these older cases were decided before § 362(b)(3) existed, but the logic is still relevant.[27] In *In re Essex Construction, LLC,* 591 B.R. 630 (Bankr. D.Md. 2018), which dealt with the filing of continuation statements under the UCC, the court quoted the U.S. First Circuit Court of Appeals: "The debtor's bankruptcy filing was notice to creditors and would be purchasers … [C]ourts recognized that when the parties are involved in insolvency proceedings, the trustee and existing creditors gain knowledge of the perfected security interest on the date the bankruptcy petition is filed. Consequently, filing a continuation statement served no purpose as to those parties."[28] The court also quoted the First Circuit stating: "Additional notice to the bank in the form of refiling [the continuation statement] was as unnecessary and useless an act as can be imagined.

---

[25] *In re RDR Systems Development, Inc.*, 57 B.R. 540, 544 (Bankr. M.D. La. 1986).
[26] *800 Bourbon Street* at FN57.
[27] *See also In re Krause*, 1996 WL 280794 (E.D.La.)
[28] *In re Essex Construction, LLC,* 591 B.R. 630, 636-37 (Bankr. D.Md. 2018) quoting *In re Halmar Distributors, Inc.*, 968 F.2d 121 (1st Cir. 1992).

Refiling is intended to protect parties in entirely different circumstances. We see no need to apply the rule here when to do so would give an unjustified advantage to a party."[29]

      In the case now before this court, River Parishes was the prospective purchaser involved in a motion to sell assets of the debtor filed with the bankruptcy court. That motion clearly disclosed the mortgage and underlying promissory notes held by BankPlus. River Parishes' principal testified at the hearing on the motion to sell. River Parishes was represented by counsel in the numerous status conferences and hearings leading up to the closing of the sale. There is no way that River Parishes was not aware of the BankPlus mortgages. But now, River Parishes seeks to exploit a perceived loophole through which it might be able to gain an advantage by knocking out BankPlus's mortgage, and thus free up funds from which it might be paid in the event that it is ever adjudged to have a claim against the debtor. This court does not buy the argument and holds that BankPlus was not required to reinscribe its mortgage to maintain its secured status, because § 108(c)(2) tolls the period in which it must reinscribe until 30 days after the stay is lifted in the debtor's bankruptcy case.

      New Orleans, Louisiana, May 31, 2019.

*Jerry A. Brown*
U.S. Bankruptcy Judge

---

[29] *In re Essex Construction, LLC,* 591 B.R. at 636.